

**McCARTHY & HOLTHUS, LLP**
Matthew Podmenik, Esq. (SBN: 219364)
David C. Scott, Esq. (SBN: 225893)
James M. Hester, Esq. (SBN: 122133)
1770 Fourth Avenue
San Diego, CA 92101
Telephone:   (619) 685-4800
Facsimile:   (619) 685-4811

Attorneys for Defendant,
Indymac Federal Bank, FSB

RETURN TO CLIENT

FILED

BY FAX

### UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

LAUREN LURIA,

                                    Plaintiff,

v.

INDYMAC FEDERAL BANK, FSB;
SKYLINE FINANCIAL CORP.;
FIDELITY NATIONAL TITLE COMPANY;
and Does 1 through 100,
inclusive,

                                    Defendants.

Case No. EDCV09-0529 AG (ANx)

Superior Court Case No: INC 083951

**NOTICE OF REMOVAL**
[28 U.S.C. § 1446(d)]

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA:

The notice of removal of Defendant INDYMAC FEDERAL BANK, FSB ("INDYMAC")
respectfully shows as follows:

1.     On February 9, 2009 the above-entitled an action was commenced against
Defendant in the Superior Court of California, County of County Of Riverside, Indio Branch,
entitled Lauren Luria, Plaintiff, Indymac Federal Bank, FSB; Skyline Financial Corp.; Fidelity
National Title Company and Does 1 through 100, inclusive, Defendants as Case No. INC 083951
attached hereto as Exhibit "A".

////

CA09-6879

2.      On February 24, 2009, INDYMAC was served with the Summons and Complaint. A copy of the Summons is attached hereto as exhibit "B".

3.      The above –described action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1441(b).  Plaintiff's complaint arises under Truth in Lending Act ("TILA"), 15 U.S.C. Section §1601 *et seq.*, and Federal Reserve Regulation-Z, 12 CFR §226 *et seq.*, and, (a)(3) Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C §2601, *et seq.* and Federal Reserve Regulation-X, 24 CFR §3500 *et seq..*   This Court has Supplemental Jurisdiction over the remaining causes of action under 28 U.S.C §1367.

4.      To the best of INDYMAC and its counsel's knowledge, none of the other parties to this action have been properly served.  Those named as Defendants, including DOE Defendants, that remain un-served need not join this Notice of Removal.[1]

WHEREFORE, Defendant INDYMAC FEDERAL BANK, FSB, prays that the above action now pending against it in the Superior Court of California, County of County of Riverside, Indio Branch, Case No. INC 083951 be removed therefore to this Court.

Dated: March 12, 2009

Respectfully submitted,
**McCARTHY & HOLTHUS, LLP**


By: _____
David C. Scott, Esq.
Attorneys for Defendant,
Indymac Federal Bank, FSB

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

---

[1] The court in <u>Salveson v. Western States Bankcard Ass'n.</u> (9th Cir. 1984) 731 F.2d 1423, 1429 held that "[o]ur circuit rule is that a party not served need not be joined; the defendants summonsed can only remove by themselves."

**NOTICE OF REMOVAL**

CA09-6879

EXHIBIT A

1 | William S. Bonnheim (Bar No. 068693)
WILLIAM S. BONNHEIM, PLC
2 | 39-301 Badger Street, Suite 800
Palm Desert, CA 92211
3 | Telephone: (760) 772-9696
Facsimile:  (760) 772-9690
4 |
Attorney for Plaintiff
5 | LAUREN LURIA

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

**FEB 09 2009**

**C. PULSIFER**

6

7

8

9

10

11

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE

12 | LAUREN LURIA,

13 |                    Plaintiff,

14 |

15 | vs.

16 | INDYMAC FEDERAL BANK, FSB;
SKYLINE FINANCIAL CORP.;
17 | FIDELITY NATIONAL TITLE
COMPANY; and Does 1 through 100,
18 | inclusive,

19 |                    Defendants.

20

21

Case No. **INC 083951**

**COMPLAINT FOR DAMAGES AND
EQUITABLE AND OTHER RELIEF**

1. Truth in Lending Act/Reg Z
2. Real Estate Settlement Procedures Act/Reg X
3. Predatory Lending
4. Unfair Competition
5. False Advertising
6. Constructive Fraud
7. Intentional Misrepresentation
8. Concealment
9. Negligent Misrepresentation
10. Breach of Fiduciary Duty
11. Negligence
12. Declaratory Relief
13. Injunctive Relief

22

23 | Plaintiff Lauren Luria, complaining of defendants IndyMac Federal Bank, FSB; Skyline Financial

24 | Corp.; Fidelity National Title Company; and Does 1 through 100 inclusive, states and alleges as follows:

25 | **INTRODUCTION AND PARTIES**

26 | 1.      This action arises from the predatory lending tactics and other wrongful conduct of

27 | defendants with respect to the real property located at 1636 Paseo de la Palma, Palm Springs,

28 |

1

California, which was refinanced by plaintiff Lauren Luria with a first and second mortgage loan brokered, originated, and/or otherwise provided by defendants. In this action, plaintiff seeks to recover money damages and other relief due to defendants' violations of a number of homeowner and consumer protection laws and other causes of action arising out of defendants' conduct in connection with the subject mortgage loans.

2.      Plaintiff Lauren Luria ("plaintiff") is an unmarried woman and is the sole and separate owner of a parcel of real property and the buildings and fixtures thereon located at 1636 Paseo de la Palma, Palm Springs, California ("the Property"), known as parcel number 680-181-019-8 and as more particularly described in the records of the County of Riverside.

3.      Defendant IndyMac Federal Bank, FSB ("IndyMac") is a federally chartered savings bank with its principal place of business in Pasadena, California, and originated or acquired the mortgage loans to plaintiff that are at issue in this action. Upon information and belief, IndyMac is and was engaged generally in the business of lending money and brokering and arranging mortgage loans for the purchase and refinancing of residential real estate, and did so in connection with plaintiff's purchase and financing of the Property. Plaintiff is informed and believes, and thereupon alleges, that at all or some times pertinent, IndyMac is and was licensed by the California Department of Real Estate as a mortgage banker and/or a finance lender.

4.      Defendant Skyline Financial Corp. ("Skyline") is a California corporation with its principal place of business in Encino, California, and which does business under a variety of names and aliases including Skyline Funding, the name under which Skyline did business with plaintiff in the transactions at issue here. Upon knowledge and belief, Skyline was at all pertinent times engaged generally in the business of servicing mortgage loans to residential real estate purchasers and owners such as plaintiff, and did so in connection with plaintiff's purchase and financing of the Property. Plaintiff is informed and believes, and thereupon alleges, that at all or some times pertinent, Skyline was licensed by the California Department of Real Estate as a mortgage banker and/or a finance lender.

5.      Defendant Fidelity National Title Company ("Fidelity") is a California corporation with its principal place of business in Jacksonville, Florida, and, upon knowledge and belief, was at

2

1   all pertinent times engaged generally in the business of providing escrow services to residential real

2   estate purchasers and owners such as plaintiff, and did so in connection with plaintiff's purchase and

3   financing of the Property. Plaintiff is informed and believes, and thereupon alleges, that at all or

4   some times pertinent, Fidelity held a license from the California Department of Real Estate.

5       6.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as

6   Does 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.

7   Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8       7.      At all times pertinent, each of the defendants were agents, servants, and employees of

9   their co-defendants, and each of them, and in doing the things hereinafter alleged, were acting in the

10  scope of their authority as agents, servants, and employees and with the permission, consent,

11  authorization and ratification of their co-defendants.

12                              <u>JURISDICTION AND VENUE</u>

13      8.      This action is within the subject matter jurisdiction of this Court because the acts and

14  omissions alleged herein occurred within this Court's territorial jurisdiction, the causes of action set

15  forth herein pertain to real property located within this Court's territorial jurisdiction, and the

16  damages and other relief sought herein are within this Court's subject matter jurisdiction.

17      9. Venue is proper in this Court because the real property which is the subject of this action

18  is located, and the acts and omissions alleged herein occurred, within this Court's territorial

19  jurisdiction.

20                                      <u>FACTS</u>

21      10.     In early 2005 plaintiff sought to refinance her mortgage on the Property. At that time,

22  plaintiff was an unmarried woman, 59 years of age, who resided in the Property and was earning

23  approximately $2,700 per month as a self-employed real estate salesperson.

24      11.     Plaintiff applied for a new mortgage from IndyMac through Skyline in May 2005.

25  Plaintiff informed defendants of the true facts surrounding her current financial situation, including:

26  (a) that she had lost much of her work in the real estate business and was earning only approximately

27  $2,700 per month; (2) that she had declared personal bankruptcy as a result of having been defrauded

28  by her former attorney years previously; and (3) that her income not returned to the same level that

                                        3

1   plaintiff had earned before she moved from Nevada to California several years previously.

2   Nevertheless, Skyline and/or IndyMac agreed to lend plaintiff $283,500 (Loan No. 05050092), which

3   amount would pay off plaintiff's previous mortgage loan (which then had a principal balance of over

4   $85,000), and would provide plaintiff with proceeds of over $193,000. To facilitate this loan to

5   plaintiff, Skyline and/or IndyMac encouraged and/or induced plaintiff to claim that her income was

6   $9,000 per month on her loan application, knowing that such a claim was false. In return for making

7   the loan to plaintiff, Skyline and/or IndyMac took a mortgage against the Property through a deed of

8   trust, a copy of which is attached as Exhibit "A." Skyline later sold or otherwise transferred the

9   mortgage to IndyMac.

10      12.   Fidelity provided, either by itself or through affiliated third parties, various escrow

11   and other services for which it charged plaintiff fees as described further herein. Those fees, which

12   were referred to in the transaction (and which will be referred to herein) as "settlement charges,"

13   were paid with a portion of the funds which plaintiff had borrowed from Skyline and/or IndyMac,

14   which resulted in those settlement charges being financed and secured through the mortgage that was

15   placed on the Property as a result of the transaction.

16      13.   Before the transaction was finalized, defendants provided plaintiff with a Truth in

17   Lending disclosure statement or statements which indicated that the mortgage would be structured so

18   as to require plaintiff to make monthly payments of $911.85 per month from July 1, 2005 through

19   June 1, 2006; $1,094.22 per month from July 1, 2006 to June 1, 2007; $1,313.06 per month from

20   July 1, 2007 through June 1, 2008; $1,423.23 per month from July 1, 2008 through June 1, 2033;

21   $1,423.31 per month from July 1, 2033 through May 1, 2035; and then a final payment of $1,423.29

22   on June 1, 2035. That structure indicated that the loan was to be a 30-year adjustable rate mortgage.

23   Defendants also provided plaintiff with a "good faith estimate" which indicated that the settlement

24   charges for the transaction would be approximately $5,900. The TILA disclosure statement and the

25   good faith estimate of settlement charges referred to in this paragraph are attached as Exhibits "B"

26   and "C", respectively.

27      14.   The mortgage, as had become prevalent in the mortgage industry, was approved

28   without proper disclosures to plaintiff of all material terms of the obligation, and also was made

4

1   without regard to the financial and other information provided by plaintiff, which, had it been read

2   by defendants in a reasonable and appropriate manner in accordance with sound industry practices,

3   would have indicated to defendants that plaintiff had little or no chance of being able to pay off the

4   obligation or keep it current under the terms of the obligation, at least not the terms which defendants

5   intended to and did in fact follow. In plaintiff's case, defendants' approval of the loan to plaintiff

6   and their application of the obligation terms carried the following deficiencies, and possibly others:

7           a.   As explained above, defendants agreed to lend the money to plaintiff despite

8   the above-stated facts and defendants' knowledge of same. Defendants did so knowing that

9   plaintiff's earning capacity and income were insufficient to cover the then-contemplated payments

10   for the loan at the outset of the obligation and throughout the term of the obligation, and in light of

11   plaintiff's other obligations which were known to defendants. Said facts were known to defendants,

12   but were ignored by them despite plaintiff having made a full disclosure of the material facts and

13   circumstances surrounding her financial condition.

14           b.   Defendants approved and made the loans to plaintiff despite knowing that

15   there was little or no possibility that she would be able to fulfill the entire amount due under the loan.

16           c.   The terms of the obligation with respect to the interest rate(s) on the

17   obligation, the fixed or adjustable nature of the interest rate(s) on the obligation, the amount of and

18   necessity and appropriateness of the settlement charges, and other material matters were not

19   disclosed to plaintiff and/or were actively concealed by defendants.

20           d.   Fidelity and other alleged providers of escrow, closing, and other services in

21   connection with the mortgage charged plaintiff numerous settlement-related fees such as application

22   fees, processing fees, underwriting fees, "loan tie-in" fees, and other fees and charges which were

23   either unnecessary or unjustifiably inflated, and which therefore were unearned and should not have

24   been paid out of the proceeds of the loan and/or included in the mortgage security interest on the

25   Property.

26       15.   The upshot of defendants' conduct in approving and making the loan to plaintiff and

27   their assessment of the unearned settlement charges is that defendants, through misleading,

28   fraudulent, and predatory lending practices, have saddled plaintiff with obligations that she cannot

5

1    hope to meet, and which will only grow more onerous with time.  At the same time, defendants have

2    charged and/or accepted exorbitant and unnecessary (and therefore unearned) settlement charges that

3    have been included in the amount of the refinancing on plaintiff's home, thereby compounding the

4    burdens placed on plaintiff through defendants' wrongful lending practices.  As alleged herein and

5    below in each cause of action, defendants knew that plaintiff would not be able to meet these

6    obligations and knew of the facts surrounding plaintiff's personal and financial circumstances at the

7    time they extended the loan to plaintiff, but ignored those facts and extended the loan to plaintiff

8    anyway.  Such actions are the essence of classic predatory lending.

9         16.    As a result of these practices and the ensuing effect on plaintiff's financial condition,

10   plaintiff has become unable to keep current on her mortgage payments.  On or about December 9,

11   2008, IndyMac (through its designated trustee, Quality Loan Service Corp.) filed a notice of default

12   against the Property (Exhibit ____) and served a copy of the same on plaintiff.  The notice of default,

13   which is the first step in commencing the foreclosure process, was deficient in several respects,

14   including without limitation the following:

15              a.    it failed to state the correct amount of the past due payments and other costs

16   and expenses which plaintiff could pay to reinstate her account;

17              b.    it stated an amount required for reinstatement that differed from the amount

18   that had been represented elsewhere to plaintiff as being the amount past due and required for

19   reinstatement as of the date of the notice of default;

20              c.    it misstated the language required to be contained in a notice of default by

21   Civil Code section 2924c; and

22              d.    it was not printed in 12-point boldface type as required by Civil Code section

23   2924c, subdivision (b)(1), except as to those portions of the notice that were required by that section

24   to be printed in 14-point boldface type.

25        17.    As a result of the acts and omissions of defendants as alleged herein, and as alleged

26   further herein, plaintiff is entitled to damages from defendants for such practices, is entitled to

27   rescind the obligation to defendants, and is entitled to equitable and other relief to prevent the forced

28   sale of her home through the foreclosure process.

6

## FIRST CAUSE OF ACTION

### Violation of the Truth In Lending Act, 15 U.S.C. § 1601 et seq. and Federal Reserve Regulation Z, 12 C.F.R. § 226 et seq.

### (Against IndyMac only)

18. Plaintiff restates and incorporates the allegations of paragraphs 1 through 17 above as though fully rewritten herein.

19. IndyMac is a creditor within the meaning of the Truth in Lending Act ("TILA") as implemented by Federal Reserve Regulation Z.

20. On information and belief, the funds for which the mortgage loan was incurred by plaintiff were used to pay settlement charges including, *inter alia*, charges for application fees, processing fees, "loan tie-in" fees, and other fees, all of which were required by IndyMac as an incident to or a condition of its extension of credit to plaintiff.

21. The charges for such settlement charges and the mortgage loan were not bona fide and reasonable and were "finance charges" under TILA that required proper disclosure.

22. IndyMac violated TILA and Regulation Z by failing to provide plaintiff with appropriate and effective material disclosures required under TILA.

23. Any and all statute(s) of limitations relating to disclosures and notices required under 15 U.S.C. § 1601 *et seq.* were tolled due to IndyMac's failure to effectively provide the required disclosures and notices.

24. As a direct and proximate result of these violations, plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction, excluding principal payments, if any.

25. The acts of IndyMac as described herein were willful, wanton, and in conscious disregard of the rights of plaintiff, and on that basis plaintiff is entitled to recover punitive damages in an amount to be established at trial.

///

///

7

## SECOND CAUSE OF ACTION

### Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 et seq. and Federal Reserve Regulation X, 24 C.F.R. § 3500 et seq.

### (Against All Defendants)

26.     Plaintiff restates and incorporates the allegations of paragraphs 1 through 25 above as though fully rewritten herein.

27.     The mortgage loan made to plaintiff by IndyMac is a federally related mortgage loan as defined in the Real Estate Settlement Procedures Act of 1974 ("RESPA") and implemented by Federal Reserve Regulation X, as explained by HUD in "Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b)," 66 Fed.Reg. 53052 ("HUD's 2001-1 Policy Statement"). HUD's 2001-1 Policy Statement explains further that yield spread premiums "...allow the broker to recoup up front costs incurred on the borrower's behalf in originating the loan." In this case, defendants charged plaintiff the settlement charges in connection with the IndyMac mortgage loan, including but not limited to yield spread premiums and the unearned costs and fees alleged above.

28.     While elaborating on the test to determine the legality of yield spread premiums, HUD's 2001-1 Policy Statement explains that the second prong of its two part test to determine the legality of yield spread premiums may not be satisfied when the loan broker does not offer the borrower the option to pay a lower amount of total fees up front. In this case, defendants failed to offer plaintiff the option of paying a lower amount of total fees up front or paying the closing costs and other fees up front, and required plaintiff to finance those fees and costs along with the loan from IndyMac.

29.     The value of Skyline's and Fidelity's actual services rendered in the brokering and escrow process of the mortgage loan at issue herein was zero or negligible because Skyline and Fidelity failed to disclose materials terms of the transaction, and because the settlement charges assessed against plaintiff were exorbitant, unnecessary, and/or for services that were not actually rendered by Skyline and Fidelity. Accordingly, the fees and costs alleged above were unlawful

8

1    unearned fees under RESPA because they were was not reasonably related to the performance of

2    lawful services.

3       30.    Defendants also violated RESPA by charging and/or accepting and/or paying

4    excessive fees for plaintiff's credit reports.

5       31.    Pursuant to 12 U.S.C. § 2607(d), plaintiff is entitled to recover from defendants an

6    amount equal to three times the amount of any and all charges for "settlement services" paid directly

7    or indirectly by plaintiff, as well as actual damages, court costs, attorneys' fees and any other

8    amounts or damages permissible under RESPA.

9       32.    By the actions described herein and as a proximate cause of the conduct of

10    defendants, plaintiff was damaged in an amount to be proven at trial but not yet ascertained.

11

12                      **THIRD CAUSE OF ACTION**

13            **Predatory Lending - California Financial Code § 4970 et seq.**

14                      **(Against IndyMac Only)**

15       33.    Plaintiff restates and incorporates the allegations of paragraphs 1 through 32 above as

16    though fully rewritten herein.

17       34.    The mortgage loan made to plaintiff by IndyMac was and is a covered loan and a

18    consumer loan as those terms are defined and used in California Financial Code § 4970.

19       35.    IndyMac owed plaintiff fiduciary duties pursuant to California Financial Code

20    § 4979.5 and breached such duties through and by the acts and omissions alleged herein.

21       36.    IndyMac originated the subject mortgage loan in violation of and noncompliance

22    with, *inter alia,* California Financial Code §§ 4973 and 4979.6.

23       37.    IndyMac failed to provide the disclosures mandated by California Financial Code

24    § 4970 *et seq.* in an effective or complete manner.

25       38.    By the actions and other conduct described herein, IndyMac proximately caused

26    damage to plaintiff in an amount to be proven at trial but not yet ascertained.

27    ///

28

## FOURTH CAUSE OF ACTION

### Violation of the Unfair Competition Act - Business & Professions Code § 17200 et seq.

### (Against All Defendants)

39.    Plaintiff restates and incorporates the allegations of paragraphs 1 through 38 above as though fully rewritten herein.

40.    Plaintiff is informed and believes, and on that basis alleges, that defendants have been engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code § 17200 et seq., proscribing deceptive business practices. These unfair business practices include, without limitation, the following:

a.    Engaging in predatory lending practices with borrowers including, but not limited to, the use of high pressure sales tactics and the falsification and/or omission of loan application information;

b.    Self-dealing at the expense of borrowers;

c.    Failing to provide notices and disclosures required by TILA and RESPA;

d.    Filing and/or serving a noncomplying notice of default against the Property; and

e.    Violating TILA; violating RESPA; violating the False Advertising Act, California Business and Professions Code § 17500 et seq., and/or any other applicable statute.

41.    The above-described unlawful, unfair and fraudulent business practices are an ongoing threat of injury to plaintiff and the general public. Plaintiff and the general public continue to be financially harmed by such conduct and, unless restrained, defendants will continue to engage in such conduct.

42.    Pursuant to California Business and Professions Code § 17203, plaintiff is entitled to an order of this Court enjoining defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiff and the general public will be irreparably harmed if such an order is not granted.

10

43. Defendants have been unjustly enriched at the expense of plaintiff who therefore is entitled to equitable restitution and disgorgement of profits realized by defendants as a result of the violative acts and omissions complained of in this cause of action.

### FIFTH CAUSE OF ACTION

### Violation of the False Advertising Act – California Business & Professions Code § 17500 *et seq.*

### (Against All Defendants)

44. Plaintiff restates and incorporates the allegations of paragraphs 1 through 43 above as though fully rewritten herein.

45. The advertising, promotional materials and other written or oral promotional efforts undertaken by defendants to induce plaintiff and other consumers to enter into loan transactions of the sort at issue herein contained statements that were deceptive, untrue and/or misleading, or omitted material information, and which were known, or by the exercise of reasonable care should have been known, by defendants to be deceptive, untrue and/or misleading, in violation of California Business and Professions Code § 17500 *et seq.*

46. Defendants' use of various forms of advertising call attention to or give publicity to the sale of their goods or services, and other practices, as set forth above, which were not as advertised or as otherwise represented, constituted unfair competition, deceptive, untrue and/or misleading advertising and unlawful business practice within the meaning of California Business and Professions Code §§ 17200 *et seq.* and 17500 *et seq.*

47. These advertisements and practices have deceived and injured plaintiff and are likely to deceive and injure the consuming public in violation of those sections.

48. Pursuant to California Business and Professions Code §§ 17203 and 17535, plaintiff seeks an order of this Court enjoining defendants from continuing to engage in their false advertising practices. Plaintiff will be irreparably harmed if such an order is not granted.

49. Defendants have been unjustly enriched at the expense of plaintiff, who is therefore entitled to equitable restitution and disgorgement of profits realized by defendants as a result of their unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

11

## SIXTH CAUSE OF ACTION

### Constructive Fraud – California Civil Code § 1573

### (Against IndyMac, Skyline, and Fidelity Only)

50. Plaintiff restates and incorporates the allegations of paragraphs 1 through 49 above as though fully rewritten herein.

51. IndyMac, Skyline, and Fidelity owed a fiduciary duty to plaintiff because they were acting in their capacities as licensees of the California Department of Real Estate.

52. Said defendants breached that duty by, *inter alia*, misrepresenting or failing to disclose the following material facts about the transaction:

      a. The true approximate monthly mortgage obligation;

      b. The true total cost to plaintiff of refinancing the Property;

      c. That using her true monthly income and assets, plaintiff did not qualify to borrow enough money to refinance the Property on the terms disclosed (or failed to be disclosed) by defendants;

      d. That some or all of the settlement charges assessed by defendants in connection with the transaction were exorbitant, unnecessary, and/or otherwise unearned; and

      e. That plaintiff was not obligated to proceed with the transaction because she did not have the ability to repay the loan.

53. Said defendants intended to deceive plaintiff by the misrepresentations or nondisclosures alleged herein.

54. Plaintiff reasonably relied on the misrepresentations or nondisclosures alleged herein.

55. As a proximate result of her reasonable reliance on the misrepresentations and nondisclosures alleged herein, plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.

56. Said defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish said defendants.

12

COMPLAINT FOR DAMAGES AND OTHER RELIEF

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation – Civil Code §§ 1709-1710

### (Against IndyMac, Skyline, and Fidelity Only)

57. Plaintiff restates and incorporates the allegations of paragraphs 1 through 56 above as though fully rewritten herein.

58. Plaintiff is informed and believes, and thereupon alleges, that IndyMac, Skyline, and Fidelity knowingly and deliberately designed the transaction for the refinancing of the Property in such a manner so as to have the subject mortgage loan fail and/or go into default for nonpayment, and/or to provide for the assessment of unearned settlement charges.

59. Plaintiff is informed and believes, and thereupon alleges, that said defendants designed the loan to fail so as to force plaintiff to refinance the loan through them at a later date and collect further fees, including unearned settlement fees of the types alleged herein.

60. Said defendants falsely represented to plaintiff, *inter alia*, the following:

    a. The true approximate monthly mortgage obligation;

    b. The true total cost to plaintiff of refinancing the Property;

    c. That using her true monthly income and assets, plaintiff qualified to borrow enough money to refinance the Property on the terms disclosed (or failed to be disclosed) by defendants, when in fact she did not;

    d. That some or all of the settlement charges assessed by defendants in connection with the transaction were appropriate, when in fact they were exorbitant, unnecessary, and/or otherwise unearned; and

    e. That plaintiff had the ability to repay the loan.

61. Said defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

62. Said defendants intended that plaintiff rely on the misrepresentations alleged herein.

63. Plaintiff reasonably relied on the misrepresentations alleged herein.

13

64. As a proximate result of his reasonable reliance on said defendants' misrepresentations, plaintiff sustained damages in an amount to be proven at trial but not yet ascertaine

65. Said defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish said defendants.

## EIGHTH CAUSE OF ACTION

### Concealment - California Civil Code §§ 1709-1710

### (Against IndyMac, Skyline, and Fidelity Only)

66. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 65 above as though fully rewritten herein.

67. IndyMac, Skyline, and Fidelity concealed certain material facts from plaintiff who was not aware of them including, but not limited to the following:

    a.    The true approximate monthly mortgage obligation;

    b.    The true total cost to plaintiff of refinancing the Property;

    c.    That using her true monthly income and assets, plaintiff did not qualify to borrow enough money to refinance the Property on the terms disclosed (or failed to be disclosed) by defendants;

    d.    That some or all of the settlement charges assessed by defendants in connection with the transaction were exorbitant, unnecessary, and/or otherwise unearned; and

    e.    That plaintiff was not obligated to proceed with the transaction because she did not have the ability to repay the loan.

68. Said defendants were under a duty to disclose the facts to plaintiff because of their fiduciary relationship with plaintiff.

69. Said defendants concealed or suppressed the facts with an intent to defraud.

70. Plaintiff was unaware of the facts and reasonably relied on said defendants' deception in proceeding with the subject transaction. As a proximate result, plaintiff has been damaged in an amount to be determined at trial but not yet ascertained.

14

71. The concealment by said defendants alleged herein was a substantial factor in causing plaintiffs to sustain damages and directly and proximately caused said damages.

72. Said defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish said defendants.

## NINTH CAUSE OF ACTION

### Negligent Misrepresentation - California Civil Code §§ 1709-1710

### (Against IndyMac, Skyline, and Fidelity Only)

73. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 72 above as though fully rewritten herein.

74. IndyMac, Skyline, and Fidelity falsely represented to plaintiff, inter alia, that the following important facts were true:

    a. The true approximate monthly mortgage obligation were as said defendants had represented to plaintiff;

    b. The true total cost to plaintiff of refinancing the Property was as said defendants had represented to plaintiff;

    c. That using her true monthly income and assets, plaintiff qualified to borrow enough money to refinance the Property on the terms disclosed (or failed to be disclosed) by defendants;

    d. That some or all of the settlement charges assessed by defendants in connection with the transaction were appropriate, when in fact they were exorbitant, unnecessary, and/or otherwise unearned; and

    e. That plaintiff had the ability to repay the loan.

75. Said defendants had no reasonable basis for believing that the representations were true when the representations were made.

76. Said defendants intended that plaintiff rely on the misrepresentations.

77. Plaintiff reasonably relied on the misrepresentations.

15

78.     As a proximate result of her reasonable reliance on said defendants' misrepresentations, plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.

79.     Plaintiff's reasonable reliance on said defendants' misrepresentations was a substantial factor in causing the damages sustained by plaintiff.

80.     Said defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish said defendants.

## TENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against IndyMac, Skyline, and Fidelity Only)

81.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 80 above as though fully rewritten herein.

82.     California law imposes on lenders and brokers such as IndyMac, Skyline, and Fidelity a fiduciary duty of undivided service and loyalty.

83.     Said defendants owed plaintiff fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by, *inter alia:*

        a.     Misrepresenting and/or failing to disclose the true approximate monthly mortgage obligation;

        b.     Misrepresenting and/or failing to disclose the true total cost to plaintiff of refinancing the Property;

        c.     Misrepresenting and/or failing to disclose that using her true monthly income and assets, plaintiff did not qualify to borrow enough money to refinance the Property on the terms disclosed (or failed to be disclosed) by defendants;

        d.     Misrepresenting and/or failing to disclose that some or all of the settlement charges assessed by defendants in connection with the transaction were exorbitant, unnecessary, and/or otherwise unearned; and

16

1

     e.    Misrepresenting and/or failing to disclose that plaintiff was not obligated to

2

proceed with the Property transaction because she did not have the ability to repay the loan.

3

    84.    Said defendants engaged in the conduct alleged herein for the purpose of advancing

4

their own financial interest and in callous disregard of the foreseeable financial consequences to

5

plaintiff.

6

    85.    Said defendants failed to act diligently by failing to evaluate plaintiff's ability to repay

7

the subject loan, failing to disclose all material terms of the transaction, failing to comply with

8

applicable consumer protections intended to benefit plaintiff, assessing unearned settlement charges

9

against plaintiff, and in other respects alleged herein.

10

    86.    As a result of said defendants' breach of their fiduciary duties to plaintiff, plaintiff has

11

sustained damages to be proven at trial but not yet ascertained.

12

    87.    Said defendants' conduct as alleged herein was a substantial factor in causing the

13

damages sustained by plaintiff.

14

15

### ELEVENTH CAUSE OF ACTION

16

### Negligence

17

### (Against All Defendants)

18

    88.    Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 87

19

above as though fully rewritten herein.

20

    89.    Defendants owed plaintiff a duty to act as reasonably prudent, competent, and skillful

21

real estate mortgage loan brokers, mortgage loan lenders, providers of escrow and closing services,

22

and other participants in the residential mortgage lending industry.

23

    90.    A reasonably prudent real estate mortgage loan broker and/or mortgage loan lender

24

and/or other such participant in the residential mortgage lending industry would not have directed

25

plaintiff to the loan and other products alleged herein, originated such loans, assessed unearned

26

settlement charges, or acted or omitted to act as alleged herein with respect to defendants.

27

28

17

91. Defendants acted negligently in failing to properly consider, investigate, evaluate or audit plaintiff's loan application and/or ability to repay the loan, and in assessing the unearned settlement charges as alleged herein.

92. Plaintiff is informed and believe, and thereupon alleges, that defendants also failed to consider the underwriting factors for assessing creditworthiness that were and are commonly used in their industry in the exercise of reasonable care when they loaned to plaintiff.

93. Defendants knew or should have known to utilize the best practices for underwriting, originating and issuing loans when considering the loans to plaintiff and when assessing settlement charges against plaintiffs, but negligently failed to do so.

94. The negligent conduct as alleged herein by defendants was the proximate cause of damages sustained by plaintiff in an amount to be proven at trial but not yet ascertained.

## TWELFTH CAUSE OF ACTION

### (Declaratory Relief - Against All Defendants)

95. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 94 above as though fully rewritten herein.

96. An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties in that plaintiff contends that defendants have no authority to sell the Property at a trustee's sale or to proceed further in foreclosure thereon, for the reasons alleged herein.

97. Plaintiff contends that the notice of default and other documents as alleged herein are void, unenforceable, and of no effect against plaintiff as defendants lack standing and have no right or authority to foreclose on the Property because of the acts, omissions, and other errors by defendants as alleged herein.

98. The respective interests of the parties will be materially affected by this action.

99. Plaintiff desires, and is entitled to, a judicial determination under section 1060 of the Code of Civil Procedure of her rights and duties and a declaration that the notice of default, the

18

intended trustee's sale, and all other related documents and acts by defendants are void, unenforceable, and of no effect against plaintiff for the reasons set forth more fully herein.

## THIRTEENTH CAUSE OF ACTION

### (Preliminary and Permanent Injunction - Against All Defendants)

100.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 99 above as though fully rewritten herein.

101.     Unless and until defendants are restrained and enjoined from doing the things aforesaid, plaintiff will lose the Property through the foreclosure process, and will thereby be irreparably harmed.

102.     Plaintiff has no adequate legal remedy to prevent or compensate for the harms alleged herein.

103.     Plaintiff is entitled to a preliminary and permanent injunction against defendants, and each of them, prohibiting them from pursuing the foreclosure proceedings, including any trustee's sale, against the Property, and/or otherwise doing any other acts which would negate the effect and purpose of such an injunction and/or otherwise operate in derogation of the Court's jurisdiction over this matter, during the pendency of this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands that judgment be rendered in her favor and against defendants as follows:

1.     For damages of a compensatory and general nature, in an amount according to proof;

2.     For statutory damages and penalties in an amount according to proof and as provided for by law;

3.     For an order and judgment requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to cease all foreclosure proceedings, including any intended trustee's sale, against the Property;

19

1    4.    For an order and judgment, pursuant to section 1060 of the Code of Civil Procedure,

2  declaring the respective rights and obligations of the parties, as alleged further above;

3    5.    For a preliminary and permanent injunction requiring defendants, their partners,

4  agents, employees, assignees, and all persons acting in concert or participating with them, to take

5  affirmative action to immediately implement policies designed to ensure: (1) that all prospective

6  borrowers' loan applications contain complete information as to the borrower's ability to meet the

7  obligations therein; (2) that a thorough evaluation of all prospective borrowers' ability to repay any

8  loans made available to them is made on every loan application; and (3) that training is given to all

9  of defendants' employees and agents regarding applicable lending laws and industry practices;

10   6.    For an order requiring restitution and disgorgement of profits from defendants, as

11  alleged herein;

12   7.    For punitive damages, where appropriate, to plaintiff according to proof;

13   8.    For costs of suit, including reasonable attorney's fees; and

14   9.    For all other relief as the Court deems just.

15

16  Dated: February 6, 2009                WILLIAM S. BONNHEIM, PLC

17

18                                        By: _____
                                              William S. Bonnheim
19                                            Attorney for Plaintiff
                                              Lauren Luria
20

21

22

23

24

25

26

27

28

20

COMPLAINT FOR DAMAGES AND OTHER RELIEF

EXHIBIT A

Recording Requested By:
Skyline Financial Corp. dba Skyline Funding

Return To:
Skyline Financial Corp. dba Skyline Funding
15928 Ventura Bl., Suite 110
Encino, CA  91436

Prepared By:
Skyline Financial Corp. dba Skyline Funding
15928 Ventura Bl., Suite 110
Encino, CA  91436

--------------------[Space Above This Line For Recording Data]--------------------

# DEED OF TRUST

Loan Number: 05050092                    MIN  1001B5105051700187

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  May 19, 2005 together with all Riders to this document.
(B) "Borrower" is
LAUREN LURIA, AN UNMARRIED WOMAN

Borrower's address is 1636 PASEO DE LA PALMA
PALM SPRINGS, CA 92264 . Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Skyline Financial Corp. dba Skyline Funding
Lender is a A California Corporation
organized and existing under the laws of : CALIFORNIA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

-6A(CA) (0207)

Page 1 of 15                Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

DDS-CA1



Lender's address is 15928 Ventura Bl., Suite 110
Encino, CA 91436
(D) "Trustee" is
FIRST AMERICAN TITLE COMPANY
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated May 19, 2005
The Note states that Borrower owes Lender Two Hundred Eighty-Three Thousand Five Hundred  &
00/100                                                                             Dollars
(U.S. $283,500.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 01, 2035
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of RIVERSIDE

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

Parcel ID Number: 680-181-019-8                              which currently has the address of
1636 PASEO DE LA PALMA                                                            [Street]
PALM SPRINGS                           [City], California     92264     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                                  Page 2 of 15                          Form 3005   1/01
DDS-CAL

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice; which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statement to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                                                    -Borrower
                                         LAUREN LURIA

                                         _____ (Seal)
_____                                      -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                        -Borrower

State of California
County of                                                    } ss.

On                                    before me,

                                                              personally appeared

                                                          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

# EXHIBIT A

PARCEL 1:

AN UNDIVIDED 1/55TH INTEREST IN AND TO LOT 1 OF TRACT NO. 10528, AS SHOWN BY MAP ON FILE IN BOOK 102, PAGES 74 AND 75 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM UNITS 1 THROUGH 55, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM DIAGRAMMATIC PLAN RECORDED SEPTEMBER 6, 1979, AS INSTRUMENT NO. 188682, OFFICIAL RECORDS OF RIVERSIDE COUNTY.

PARCEL 2:

UNIT 19, AS SHOWN AND DEFINED ON CONDOMINIUM DIAGRAMMATIC PLAN REFERRED TO IN PARCEL 1 ABOVE.

APN: 680-181-019-8

First American Title

EXHIBIT B

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicant: Lauren Lurie | Prepared By: Skyline Financial Corp DBA., Skyline Funding |
| Property Address: 1636 Paseo De La Palma | 15824 Ventura Blvd. #110 |
| Palm Springs, CA 92264 | Encino, CA 91436 |
| Application No.: 00080982 | 818-986-4700 |
| | Date Prepared: 06/05/2008 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after making all payments as scheduled. |
| 4.229 % | $ 122,198.49 | $ 278,388.49 | $ 400,387.08 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.

**PAYMENTS:** Your payment schedule will be:

| No. Payments | Amount of Payments | Monthly Beginning: | | Monthly Beginning: | | Monthly Beginning: |
|---|---|---|---|---|---|---|
| 1 | 911.56 | 07/01/2008 | | | | |
| 11 | 911.56 | 08/01/2008 | | | | |
| 12 | 1,564.22 | 07/01/2008 | | | | |
| 12 | 1,319.06 | 07/01/2007 | | | | |
| 348 | 1,422.23 | 07/01/2008 | | | | |
| 23 | 1,422.31 | 07/01/2033 | | | | |
| 1 | 1,422.29 | 06/01/2038 | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.

☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance   ☐ Credit disability   ☐ Property insurance   ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.

**SECURITY:** You are giving a security interest in: 1636 Paseo De La Palma, Palm Springs CA 92264
☐ The goods or property being purchased   ☑ Real property you already own.

**FILING FEES:** $ _____ 63.00

**LATE CHARGE:** If a payment is more than   15 days late, you will be charged   5.000 % of the payment.

**PREPAYMENT:** If you pay off early, you
☐ may   ☑ will not   have to pay a penalty.
☐ may   ☑ will not   be entitled to a refund of part of the finance charge.

**ASSUMPTION:** Someone buying your property
☐ may   ☐ may, subject to conditions   ☑ may not   assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☑ e means an estimate   ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

\* \* NOTE: The Payments shown above include escrow deposits for Mortgage Insurance (if applicable), but include Property Taxes and Insurance.

**THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.**

| | | | |
|---|---|---|---|
| Lauren Lurie | | | |
| _____ (Applicant) (Date) | | _____ (Applicant) (Date) | |
| _____ (Applicant) (Date) | | _____ (Applicant) (Date) | |
| _____ (Lender) (Date) | | | |

Calyx Form - tilds.frm (8/99)

EXHIBIT C

## ITEMIZATION OF AMOUNT FINANCED

Skyline Financial Corp. dba Skyline Funding
15928 Ventura Bl., Suite 110
Encino, CA  91436
Loan #: 05050092
Borrower(s):
LAUREN LURIA

DATE: 05/19/2005

Address:
Mailing: 1636 PASEO DE LA PALMA, PALM SPRINGS, CA 92264
Property: 1636 PASEO DE LA PALMA, PALM SPRINGS, CA 92264

This form may not cover all items you will be required to pay in cash at settlement, for example, deposit in escrow for real estate taxes and insurance.  You may wish to inquire as to the amounts of such other items.  You may be required to pay other additional amounts at settlement.

**LOAN AMOUNT:**                                                                                         $283,500.00

### ITEMIZATION OF AMOUNT FINANCED:

| | | | |
|---|---|---|---|
| 801 | Loan Origination Fee | (LENDER FEE) | 2,835.00 |
| 812 | HOA CERT | (LENDER FEE) | 90.00 |
| 814 | PROCESSING FEE | (LENDER FEE) | 200.00 |
| 815 | ADMINSTRATION | (LENDER FEE) | 395.00 |
| 901 | Interest to 06/01/2005 | | 55.13 |
| 1101 | Settlement/Closing Fee | | 300.00 |
| 1303 | ENDORSEMENT | | 125.00 |
| 1304 | COURIER FEE | | 30.00 |
| 1306 | SUB-ESCROW | | 125.00 |
| 1307 | REFUNDABLE CLOSING PAD | | 350.00 |

TOTAL PREPAID FINANCE CHARGES:                                          4,505.13

**AMOUNT FINANCED:**                                                                                     $278,994.87

### AMOUNT PAID TO OTHERS ON YOUR BEHALF:

| | | | |
|---|---|---|---|
| 803 | Appraisal Fee    PAID | | 200.00 |
| 804 | Credit Report | | 42.51 |
| 1102 | Abstract or Title Search | | 805.70 |
| 1106 | Notary Fees | | 40.00 |
| 1201 | Recording Fees | | 60.00 |

TOTAL PAID TO OTHERS                                                            1,158.21

**ESTIMATED NET PROCEEDS FOR FUNDING**                                               $277,836.66

### FEES PAID BY LENDER:

| | |
|---|---|
| PROCESSING FEE | 150.00 |
| ADMINSTRATION | 350.00 |

TOTAL PAID BY LENDER:                                                           500.00

Fees Paid Outside of Closing to Broker:
| | | | |
|---|---|---|---|
| 808 | Yield Spread Premium | (BROKER FEE) | |
| 809 | Service Release Premium | (BROKER FEE) | |

I (WE) HEREBY ACKNOWLEDGE RECEIVING AND READING A COPY OF THIS DISCLOSURE.

_____            _____
LAUREN LURIA                            DATE

EXHIBIT D

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDER ON: __December 8, 2008__

AS DOCUMENT NO: __08-645405__ BK: / PG:

BY: __s/ Title Court Automation__

LSI TITLE COMPANY (CA)

Space above this line for Recorder's use

TS No.: CA-08-210983-TC                    Loan No.: 1005770361

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $9,603.73 as of 12/8/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure your default; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Indymac Bank FSB
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS No.: CA-08-210983-TC
Loan No.: 1005770381
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 5/19/2005, executed by LAUREN LURIA, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SKYLINE FINANCIAL CORP. DBA SKYLINE FUNDING, as beneficiary, recorded 5/27/2005, as Instrument No. 2005-0429240, in Book xxx, Page xxx of Official Records in the Office of the Recorder of RIVERSIDE County, California describing land therein: as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $283,500.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 5/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 12/8/2008

Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
BY: LSI Title Company

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

**EXHIBIT B**

*1005770381 - FC   Deutsch*
*Im purch 04/05*

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
INDYMAC FEDERAL BANK, FSB; SKYLINE FINANCIAL CORP.;
FIDELITY NATIONAL TITLE COMPANY, and Does 1 through
100

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

**FEB 09 2009**

**C. PULSIFER**

RECEIVED BY
LEGAL DEPARTMENT

FEB 24 2009

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LAUREN LURIA

PERSONAL   11:35 AM

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE<br>46-200 OASIS STREET<br><br>INDIO, CA 92201<br>INDIO BRANCH | CASE NUMBER:<br>*(Número del Caso):*<br>**NC 08 3 9 5 1** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William S. Bonnheim, Esq.   State Bar No. 068693   (760) 772-9696   (760) 772-9690
WILLIAM S. BONNHEIM, PLC
39-301 Badger Street, Suite 800
Palm Desert, CA 92211

DATE:                                    Clerk, by **C. PULSIFER**           , Deputy
*(Fecha)* FEB 09 2009                    *(Secretario)*                       *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

**COPY**

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* INDYMAC FEDERAL BANK

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [X] other *(specify):*

4. [X] by personal delivery on *(date):* 2-24-09

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
*Plus*

Code of Civil Procedure §§ 412.20, 465

1 **McCARTHY & HOLTHUS, LLP**
2 Daniel J. Goulding, Esq.  (SBN: 120561)
  Matthew Podmenik, Esq. (SBN: 219364)
3 David C. Scott, Esq. (SBN: 225893)
  James M. Hester, Esq. (SBN: 122133)
4 1770 Fourth Avenue
  San Diego, CA  92101
5 Telephone:    (619) 685-4800
  Facsimile:    (619) 685-4810
6
7 Attorneys for Defendant,
  Indymac Federal Bank, FSB

8             UNITED STATED DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 LAUREN LURIA,                          Case No.:

11                        Plaintiff,

12 v.                                     Superior Court Case No.:  INC 083951

13 INDYMAC FEDERAL BANK, FSB;             **PROOF OF SERVICE**
   SKYLINE FINANCIAL CORP.;
14 FIDELITY NATIONAL TITLE COMPANY;
   and Does 1 through 100,
15 inclusive.
                          Defendants.
16

17            <u>DECLARATION OF SERVICE</u>

18      I, Justin Miller, declare:

19      I am a citizen of the United States and I am employed in the County of San Diego, State of

20 California; I am over the age of 18 years and not a party to this action; my business address is

21 1770 Fourth Avenue, San Diego, California 92101.

22      I further declare that I am readily familiar with the business practice of McCarthy &

23 Holthus, LLP for service of documents, that documents served by facsimile are transmitted in and

24 the original deposited with the United States Postal Service in our ordinary course of business on

25 the same day, the documents served by mail are deposited with the United States Postal Service in

26 the ordinary course of business the same day and that documents served personally are delivered

27 the same day.

28

*McCARTHY & HOLTHUS, LLP*
*ATTORNEYS AT LAW*
*1770 FOURTH AVENUE*
*SAN DIEGO, CALIFORNIA  92101*
*TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811*

CA09-6879

1    On March 12, 2009, I served the following document(s):

2    • **NOTICE OF REMOVAL**

3

4    William S. Bonnheim, Esq.              Superior Court of California
     William S. Bonnheim, PLC               County of Riverside, Indio Branch
     39-301 Badger St., Suite 800           Attn: Clerk of the Court
5    Palm Desert, CA  92211                 46200 Oasis Street
                                            Indio, CA 92201
6

7

8    in the following manner of service (check appropriate):

     ___XX___    **BY MAIL:**  I placed a true copy in a sealed envelope addressed as
9
     indicated above.  I am readily familiar with the firm's practice of collection and processing
10
     correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the
11
     ordinary course of business.  I am aware that on a motion of party served, service is presumed
12
     invalid if postal cancellation date or postage meter date is more than one date after date of deposit
13
     for mailing in affidavit.
14
     _____    **BY FACSIMILE:**  I transmitted all documents to all parties in this action by
15
     facsimile at the telephone number(s) indicated above and thereafter placed each such sealed
16
     envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at the
17
     Law Offices of McCarthy & Holthus, LLP, San Diego, California.
18
     _____         **BY AIRBORNE EXPRESS:**  I caused such documents to be delivered by
19
     Airborne Express to the offices of the addressee(s)
20
     _____         **BY PERSONAL SERVICE:**  I caused such envelope to be delivered by
21
     hand to the addressee(s) above.
22
     I declare under penalty of perjury under the laws of the State of California, that the
23
     foregoing is true and correct.  Executed on March 12, 2009 at San Diego, California.
24
                                    By: _____
25                                       Justin Miller
26

27

28

2

**PROOF OF SERVICE**

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA, 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

CA09-6879

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## EDCV09- 529 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [ ] Southern Division | [X] Eastern Division |
| --- | --- | --- |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
LAUREN LURIA

**DEFENDANTS**
INDYMAC FEDERAL BANK, FSB; SKYLINE FINANCIAL CORP.;
FIDELITY NATIONAL TITLE COMPANY; and Does 1 through 100, inclusive.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

William S. Bonnheim, Esq.
William S. Bonnheim, PLC
39-301 Badger St., Suite 800, Palm Desert, CA 92211    (760) 772-9696

Attorneys (If Known)

McCarthy & Holthus, LLP
Matthew Podmenik, Esq.
1770 Fourth Avenue
San Diego, CA 92101    (619) 685-4800

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT:** $ over $25,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☒ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

EDCV09-0529

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Indymac Federal Bank - Michigan<br>Skyline Financial Corp - Los Angeles<br>Fidelity National Title Co. - Florida |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):                          Date: March 12, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |